# IN THE SUPREME COURT, STATE OF WYOMING

## 2014 WY 52

APRIL TERM, A.D. 2014

April 22, 2014

WILLIAM E. MECKEM, individually;
LORRAINE W. MECKEM,
individually; and DUBOIS HEIGHTS
SUBDIVISION, INC., a Wyoming
corporation,

Appellants
(Defendants),

v.                                                                    S-13-0172

WILLIAM CARTER and DANNA
CARTER, Husband and Wife,

Appellees
(Plaintiffs).

*Appeal from the District Court of Fremont County*
*The Honorable Norman E. Young, Judge*

*Representing Appellants:*
William L. Miller of Miller & Fasse, P.C., Riverton, Wyoming

*Representing Appellees:*
Aaron J. Vincent of Vincent Law Office, Riverton, Wyoming

*Before KITE, C.J., and HILL, BURKE, DAVIS, and FOX, JJ.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**DAVIS**, Justice.

[¶1]    Appellants William and Lorraine Meckem challenge an order holding them in civil contempt for violating a judgment directing them to remove obstructions from a road easement that traverses their property.[1]  We affirm the district court's determination that Appellants' conduct was contumacious.  However, the district court erred when it ordered Appellants to pay a penalty of $100 per day to the court until the obstructions are removed, and we therefore reverse that part of the order.

## ISSUES

[¶2]    Appellants present the following issues for our review:

> I.      Whether the district court exceeded its authority to amend its original judgment with its order of contempt?
>
> II.     Whether the district court erred in finding that the Appellants were in contempt of court?

## FACTS

[¶3]    William and Danna Carter and the Meckems own abutting tracts of land near Dubois, Wyoming.  Since purchasing their property in 1991, the Carters have accessed their parcel by traveling over the Meckems' property pursuant to an easement for a road right of way, which grants:

> An easement twenty feet in width over and across the NE¼NE¼, Section 7, Township 41 North, Range 106 West, 6th P.M., Fremont County, Wyoming, and over and across the dedicated road through the Dubois Heights Subdivision, Fremont County, Wyoming, said access to be over the presently existing road, or such other location reasonably similar as the grantor may determine, from time to time.[2]

---

[1] Dubois Heights Subdivision, Inc., a Wyoming corporation that was administratively dissolved and became inactive in 2001, is also a named appellant.  Mr. Meckem was the president and registered agent and Ms. Meckem the secretary.

[2] The easement was obtained in 1979 by previous owners of the Carters' property, which preceded the enactment of Wyoming's easement statute that "requires specific descriptions for easements recorded after May 20, 1981." *Mueller v. Hoblyn*, 887 P.2d 500, 505 (Wyo. 1994) (holding easement granted in 1969, prior to the adoption of Wyo. Stat. § 34-1-141, was valid and enforceable).  Our state's easement statute is not applied retroactively; therefore, the Carters' easement is valid and enforceable despite the lack of a specific description of its location. *See Edgcomb v. Lower Valley Power & Light, Inc.*, 922 P.2d 850, 859 (Wyo. 1996).

1

[¶4]   For years, the Carters have utilized two routes over the Meckems' property—the Dubois Heights Road and the Solitude Road. However, the Meckems recently placed locked gates across both roads, thereby denying Carters access to their property by the route they had historically used. The Meckems also obstructed the Carters' use of the Dubois Heights Road by, *inter alia*, placing a utility service box and a septic system leach field in or near the road where it intersects with the Solitude Road. The practical effect of these obstructions is to prevent the Carters from driving logging trucks to and from their property, where they operate a small sawmill.

[¶5]   In 2012, the Carters filed an action for a declaratory judgment determining the parties' rights, duties, and obligations under the easement, a mandatory injunction requiring the Meckems to remove the obstructions limiting their access, and a permanent injunction restraining them from interfering with their use of the easement. The Meckems counterclaimed, asserting that under the language of the easement they have the right to move the easement and that they have constructed a reasonably similar road (Sussman Road) for the Carters to use. They therefore asked the district court to declare that the Carters could only use this newly constructed road to reach their property.

[¶6]   The district court began a hearing on the application for a preliminary injunction on April 18, 2012. Although some evidence was presented, the parties were unable to complete the hearing in the allotted time and the matter was continued to May 1, 2012. The parties subsequently stipulated that the district court could consolidate the preliminary injunction hearing with a bench trial on the merits as permitted by W.R.C.P. 65(a)(2), which it did.

[¶7]   Trial on the merits took place on May 1, 2012, and the district court subsequently entered clear and cogent *Findings of Fact, Conclusions of Law and Judgment* on August 31, 2012. It made the following pertinent findings of fact:

> 14. To access their property, the Plaintiffs have used primarily two routes. The first was described as the "Dubois Heights Road". Since approximately 1979, the Plaintiffs or their predecessors have used the Dubois Heights Road to access their property.
>
> .   .   .
>
> 21. The Defendants have prohibited the Plaintiffs' use of the Dubois Heights Road and the Solitude Road by placing locked gates across both.
>
> 22. The Defendants have also obstructed Plaintiffs' use of the Dubois Heights Road by placing utility service and septic

2

system leach field in or near the Dubois Heights Road in the area it intersects with the Solitude Road. Defendants have also placed a significant ditch or dip in the roadway just south of the south boundary of Plaintiffs' property.

[¶8] Analyzing and applying controlling law, the district court then found that the Carters had a valid appurtenant easement across the Meckems' property *via* the Dubois Heights Road. It arrived at the following conclusions of law:

A. The Plaintiffs are the successors in interest and owners of interest created by that certain easement dated January 9, 1979 and recorded January 25, 1979 at Book 96 of Microfilm, Page 8 in the office of the Fremont County Clerk, Fremont County Wyoming.

B. Pursuant to said easement, the Plaintiffs are entitled to the use of a strip of land 20 feet in width located in the NE1/4NE1/4 of Section 7, Township 41 N., Range 106 W., 6th P.M., Fremont County, Wyoming and over and across the presently existing road in the Dubois Heights Subdivision.

C. That the "presently existing road" in 1979 and as of the date of this order is generally described as 10 feet either side of the centerline of the road most clearly defined by the red line in Exhibit "O", that being the road that traverses Lot 14 of the Dubois Heights Subdivision after leaving Mountain View Road, proceeding down the hillside to its intersection with the Solitude Road which is marked green, then generally north to the south boundary of Plaintiffs' property.

D. That the Defendants should be and are enjoined from interfering with or obstructing Plaintiffs use of the "Dubois Heights Road' as described in paragraph "C" above and are further ***directed to remove any and all gates, <u>utilities</u>, <u>leach field</u> or other potential obstruction <u>from the Dubois Heights Road</u>*** as described in paragraph "C" above.

(Emphasis added.) The district court's *Findings of Fact, Conclusions of Law and Judgment* was never appealed.

[¶9] On March 22, 2013, the Carters filed a *Motion for Order to Show Cause* asserting that the Meckems should be held in contempt of court for violating the prior judgment by failing to remove obstructions as they had previously been ordered to do. They alleged

3

that the Meckems refused to remove the electric utility box and septic system leach field that interfere with the use of the Dubois Heights Road, which necessarily prevents the Carters from using the sawmill on their property because trucks hauling logs cannot get through. Appellants countered by arguing that they reviewed the location of the road as shown on the map relied upon by the district court (Exhibit "O"), and that the utility box and leach field did not in fact obstruct the Dubois Heights Road.[3] They posited that the Dubois Heights Road, as highlighted in Exhibit "O", created a "T" intersection with the Solitude Road and went around to the right of the electric utility box and leach field, not through them. Appellants argued that the existing utility box and leach filed were not located within the boundaries of the Dubois Heights Road as it was described by the district court's judgment, and that they were therefore not in contempt of court.

[¶10] The district court held a hearing on the order to show cause and issued the following *Order of Contempt*:

> Nature of the Proceeding:
>
> On August 31, 2012 the Court entered its *Findings of Fact, Conclusions of Law, and Judgment* which adjudicated the rights, duties and obligations of the parties with respect to a certain easement owned by the Plaintiffs. The Plaintiffs bring this contempt action claiming the Defendants, specifically William Meckem, is in contempt of the Court's Order for failing to remove certain obstructions to the easement making it difficult or nearly impossible for Plaintiffs to have access to their property as in the past.
>
> Contentions:
>
> The Plaintiffs contend that the Defendants have failed to remove obstructions, including utilities and a leach field that are located in the easement at the intersection of the Dubois Heights Road and the Solitude Road. The Defendants contend that the language utilized by the Court, describing the easement by reference to Exhibit 0 admitted at trial, places the obstruction outside the easement.

---

[3] The photographic map that the district court referenced in its *Judgment* is marked as Exhibit "O." It is an aerial photograph of the area at issue, which includes the Dubois Heights Road and Solitude Road and where they intersect. The Carters prepared Exhibit "O", which highlights the Dubois Heights Road in red and the Solitude Road in green. The detail of the roads is somewhat obscured by the highlighting. However, other photographs received in evidence are not highlighted and clearly show the roads and how they intersect.

4

Stated differently, the Plaintiff contends that the intersection of the Dubois Heights and Solitude Roads was a "Y", or curving intersection, and that the installation of the drain or leach field and utilities by the defendant have eliminated the "Y" making the intersection a "T", or 90° corner that the defendant cannot negotiate with trucks and trailers without leaving the 20 foot easement. The Defendants contend that the Court's reference to Exhibit 0 in paragraph C on page 8 of the *Findings of Fact, Conclusions of Law, and Judgment* described the "T" intersection and therefore the leach field and utilities do not obstruct the easement and they are not in contempt.

Issue:

The issue framed by the parties' pleadings and the parties' contentions is whether the defendants are in contempt for failing to remove obstructions from the "Y" intersection of the Dubois Heights and Solitude Roads as ordered by the Court.

Discussion:

The Court's previous findings of fact are incorporated herein. In addition, the Court finds that the Defendants have placed a leach field and utilities in the easement in the area of the intersection of the Dubois Heights Road and Solitude Roads. The Court specifically finds that the easement at this intersection from its grant in 1979, followed a curving or "Y" intersection in the area in questions until the Defendants changed it by placing the leach field and utilities directly in the path of the road/easement as it existed for many years and specifically, as it existed when the Plaintiffs purchased the dominant estate.

The Defendants' stated purpose has been, and remains, to stop the Plaintiffs from utilizing the easement to transport logs to their property and to utilize their property in a manner the Defendant, William Meckem, deems incompatible with his development plans. Defendant Meckem's reliance on his interpretation of the Court's language in paragraph C on page 8 of the prior order as creating a "T" intersection at the junction of the Dubois Heights Road and the Solitude Road is

misplaced. Without a survey or metes and bounds description, the Court was simply utilizing the best evidence put before it to describe the location of an easement that would be void today for lack of a sufficient legal description by operation of W.S. §34-1-141.

Had the Court intended to create or legitimize a "T" intersection, it could have easily done so. It also would not have been necessary to make finding 22 on page 5 of the original order which states:

> "The Defendants have also obstructed Plaintiffs use of the Dubois Heights Road by placing utility service and septic system leach field in or near the Dubois Heights Road in the area where it intersects with the Solitude Road. . ."

And it goes without saying that it would not have been necessary to order Defendants to "remove any and all gates, utilities, leach field or other potential obstruction" from the Dubois Heights Road.

IT IS HEREBY ORDERED CONSIDERED, ADJUDGED AND DECREED,

1. The Defendants are in contempt of the Court's previous judgment in this matter for failing to remove utility services and a leach field from the curving "Y" intersection of the Dubois Heights Road with the Solitude Road.

2. The Defendants may purge themselves of this contempt by removing all obstructions from the area located within 250 feet of the intersection of Solitude Road and Dubois Heights Road at their expense on or before August 1, 2013 so as to allow the Plaintiffs the right of ingress and egress along the curving "Y" intersection of the Dubois Heights Road and the Solitude Road.

3. The Defendants shall pay a penalty to the Court of $100.00 per day commencing August 2, 2013 and each day thereafter until such time as the obstructions to the intersection of Solitude Road and Dubois Heights Road as ordered above are fully and completely removed.

4.    Until such time as the obstructions to the intersection of the Dubois Heights Road and Solitude Road are removed, the Plaintiffs are authorized to exceed the 20 feet width of the easement to the extent necessary in order to negotiate the "T" intersection created by the Defendants or to simply use the Solitude Road in order to access their property.

IT IS FURTHER ORDERED that should Defendants seek to move or relocate any portion of the easement in the manner provided in the grant, they should first submit the proposed route to the Court for approval, along with a sufficient map and metes and bounds description.

IT IS FURTHER ORDERED that the Defendants shall pay Plaintiffs' attorney's fees and costs incurred in bringing this contempt action. Plaintiffs shall submit their fees and costs for approval within ten (10) days of the date of this order.

Appellants timely appealed the order holding them in contempt of court.

## DISCUSSION

**Amendment of the *Judgment* by the *Order of Contempt***

[¶11] Appellants argue that the district court exceeded its authority under W.R.C.P. 60(a)[4] by amending the original judgment through its order holding them in contempt. They assert that the contempt order impermissibly changes the location and width of the easement in two ways. First, they claim that the Dubois Heights Road and Solitude Road intersection was changed from a "T" that was allegedly created in the original judgment to a curving "Y" intersection by the contempt order. Second, they contend that the district court impermissibly amended the judgment by precluding Appellants from placing anything within 250 feet of the subject intersection. After carefully examining the record, *Judgment,* and *Order of Contempt*, we disagree.

---

[4] W.R.C.P. 60(a) provides in pertinent part:

(a) *Clerical mistakes.*—Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders.

[¶12] Rule 60(a) is intended to correct clerical errors rather than mistakes made by the court (judicial errors). *Elsasser v. Elsasser*, 989 P.2d 106, 108 (Wyo. 1999). "A clerical error is a mistake or omission of a mechanical nature apparent on the face of the record that prevents the judgment as entered from accurately reflecting the judgment that was rendered." *Id.* The rule "is designed to clarify, as well as to correct, and is properly invoked to dispel either patent or latent ambiguities in a judgment." *Id.*

[¶13] When we review a district court's application of Rule 60(a), a two-part inquiry is required. *Tafoya v. Tafoya*, 2013 WY 121, ¶ 7, 309 P.3d 1236, 1238 (Wyo. 2013). The first question is whether the correction or clarification of a judgment relates to a "clerical mistake." *Id.* If we find that it does, we review the district court's order to ascertain whether it just clarified or went farther and actually modified the original judgment. *Id.* Because both questions are matters of law, our review is *de novo*. *Id.*

[¶14] We find Appellants' argument that the order holding them in contempt impermissibly modified the substance of the original decision as prohibited by Rule 60(a) tenuous at best. The contempt order simply does not amend or modify the original judgment. At most, it corrects Appellants' misinterpretation of the judgment. Nothing in the judgment suggests that the subject intersection forms a "T". The photographs depicting it clearly show that the Dubois Heights Road intersects with the Solitude Road in a curved "Y" configuration. The judgment and order holding Appellants in contempt are entirely consistent with the inescapable fact that the roads intersect in that way, and that the utility service box and leach field demonstrably intrude upon the easement the district court described. Therefore, the language in the order of contempt describing a "Y" intersection does not modify or amend the provisions of the original judgment, although it may permissibly clarify them.

[¶15] Further supporting our conclusion is the absence of any ambiguity regarding the removal of the specific obstructions that impede the Carters' use of the Dubois Heights Road where it intersects with the Solitude Road in the original judgment. *See e.g.*, *Tafoya*, ¶ 15, 309 P.3d at 1240 ("This Court applies the same rule when construing a court order as used in construing a contract." (citation omitted)). It plainly states:

> 22. The Defendants have also obstructed Plaintiffs' use of the Dubois Heights Road by placing utility service and septic system leach field in or near the Dubois Heights Road in the area it intersects with the Solitude Road. . . .
>
> .   .   .
>
> D. That the Defendants should be and are enjoined from interfering with or obstructing Plaintiffs use of the "Dubois Heights Road' as described in paragraph "C" above and are

8

further directed to remove any and all gates, utilities, leach field or other potential obstruction from the "Dubois Heights Road" as described in paragraph "C" above.

As the district court astutely noted in its *Order of Contempt*, if it had intended to change the existing intersection to a "T" in its original decree, it could easily have done so. If it had, it would have been unnecessary to find that Appellants had obstructed the use of the Dubois Heights Road by placing utility service and septic system leach field in or near where it intersects with the Solitude Road and to have ordered their removal. Appellants' interpretation would thus render a portion of the original decision meaningless.

[¶16] Lastly, we reject Appellants' assertion that the district court's contempt ruling expands the easement to a 250 foot circular radius at the subject intersection and impermissibly amends the original judgment. The district court's directive that Appellants remove all obstructions from the area within 250 feet of the intersection is an appropriate remedy to ensure Appellants' compliance with the judgment. Alternatively, it can be viewed as a sanction for Appellants' contumacious conduct, which is an appropriate remedy in this circumstance. *See Stephens v. Lavitt*, 2010 WY 129, ¶ 18, 239 P.3d 634, 639 (Wyo. 2010) (forfeiture of easement due to dominant estate owner's violation of a permanent injunction was a proper sanction for civil contempt under the circumstances).

**Finding of Contempt**

[¶17] Appellants contend that because in their view the district court exceeded its authority in amending the judgment by the order holding them in contempt, it also erred in finding them in contempt. They argue that they had no way of knowing that the judgment required them to remove the electric utility box and leach field that interfered with the Carters' use of the Dubois Heights Road because that was not made clear until they were held in contempt. However, the record, *Judgment*, and *Order of Contempt* belie that claim.

[¶18] The inherent power to punish contempts of court is firmly vested in the district court's broad discretion, and we will not intrude upon its decision unless it commits a clear and grave abuse of that discretion. *Stephens*, ¶ 18, 239 P.3d at 639. "In determining whether the district court abused its discretion, we consider whether it could have reasonably concluded as it did." *Id.* (quotations marks omitted).

[¶19] Civil contempt sanctions are intended to compel a party to comply with a lawful court order. "In essence, the contemnor carries the keys of his prison in his own pocket, and can obtain release by complying with the order of the court that sent him there." *Swain v. State*, 2009 WY 142, ¶ 13, 220 P.3d 504, 508 (Wyo. 2009). Put another way,

9

one held in civil contempt may usually purge himself by compliance. *See* 17 C.J.S. *Contempt* § 198 (2014).

[¶20] We recently made it clear that "civil contempt must be proven by clear and convincing evidence." *Shindell v. Shindell*, 2014 WY 51, ¶ 10, --- P.3d ---, -- (Wyo. 2014).[5] Clear and convincing evidence is that kind of proof that would persuade the trier of fact that the truth of the contention is highly probable. *Id.* The party requesting the contempt has the burden of proving that: "1) an effective court order that required certain conduct by the alleged contemnor; 2) the contemnor had knowledge of the order; and 3) the alleged contemnor disobeyed the order." *Id.* As to the third element, the burden is to prove that the failure to comply was willful; not simply that the offending party merely failed to comply.[6] "Once those elements are proven, the burden shifts to the person charged with contempt to show he or she was unable to comply." *Id.*; *see* 17 C.J.S. *Contempt* § 141 (2014).

[¶21] Our review of the record convinces us that the Carters met their burden of proving civil contempt by clear and convincing evidence. As we have explained, *see, e.g.*, ¶ 15, the judgment specifically enjoined Appellants from interfering with or obstructing the Carters' use of the Dubois Heights Road and "further directed [them] to remove any and all gates, utilities, leach field or other potential obstruction from the 'Dubois Heights Road.'" This language unequivocally ordered them to remove specific obstructions to allow the Carters to use their easement over the Dubois Heights Road. Therefore, the first two elements of contempt were clearly proven.

[¶22] Regarding the third element, although Appellants were specifically ordered to remove the utilities and leach field obstructing the use of the easement, they failed to comply, and the evidence clearly and convincingly supports the conclusion that they did so willfully. There is no doubt that the Dubois Heights Road and Solitude Road intersect

---

[5] *See also, e.g., United States v. Ford*, 514 F.3d 1047, 1051 (10th Cir. 2008); *In re Bennett*, 298 F.3d 1059, 1069 (9th Cir. 2002); *In re Gen. Motors Corp.*, 61 F.3d 256, 258 (4th Cir. 1995); *John T. ex rel. Paul T. v. Delaware Cnty. Intermediate Unit*, 318 F.3d 545, 552 (3d Cir. 2003); *Biron v. Falardeau*, 798 A.2d 379, 382 (R.I. 2002); *LeMay v. Leander*, 994 P.2d 546, 556 (Haw. 2000); *Poston v. Poston*, 502 S.E.2d 86, 89 (S.C. 1998); *Masonite Corp. v. Int'l Woodworkers of Am., AFL-CIO*, 206 So. 2d 171, 180 (Miss. 1967); 17 Am. Jur. 2d *Contempt* § 183 (2014); 17 C.J.S. *Contempt* § 146 (2014).

[6] *See Turner v. Rogers*, --- U.S. ---, 131 S. Ct. 2507, 2516, 180 L. Ed. 2d 452 (2011) ("A court may not impose punishment 'in a civil contempt proceeding when it is clearly established that the alleged contemnor is unable to comply with the terms of the order.'"); *see also Olsen v. Olsen*, 2013 WY 115, ¶¶ 33-36, 310 P.3d 888, 896 (Wyo. 2013) (affirming district court's finding of civil contempt because evidence in the record, along with the inferences reasonably drawn from that evidence, supported the finding that appellant willfully violated the court's order); *Roberts v. Locke*, 2013 WY 73, ¶¶ 24-27, 304 P.3d 116, 121-22 (Wyo. 2013) (requiring deliberate and willful defiance for civil contempt); *Greene v. Finn*, 2007 WY 47, ¶ 15 n.2, 153 P.3d 945, 951 n.2 (Wyo. 2007) (recognizing willfulness may be an element of civil contempt, but ultimately declining to decide the issue).

in the way described above, or that the utility service box and leach field intrude upon it. *See* ¶¶ 14-15. Furthermore, as the district court found, and the record makes clear, Appellants intended to stop the Carters from utilizing their easement to transport logs to their property, and leaving the obstructions they were ordered to remove in place accomplishes that objective. At the show-cause hearing, Mr. Meckem unrepentantly testified that he wanted to prevent the Carters from using the Dubois Heights Road to haul logs through a trailer park he planned, and that he intended to put some kind of obstructions on or near the twenty-foot easement to prevent them from doing so.

[¶23] Once Appellees proved that Appellants acted in willful defiance of a reasonably clear court order, the burden shifted to Appellants to prove that they could not comply with the order. They argue that they could not comply with the judgment because they had no way of knowing that the court intended to order them to remove the utility box and leach field. As we have already indicated, the judgment clearly ordered Appellants to remove the obstructions, and they could only conclude that it did not through deliberate obtuseness to its plain language. Rather than challenging the original judgment by appealing to this Court, they simply chose to ignore key provisions of it. We agree with the district court that Appellants' conduct was sufficient to constitute willful defiance of the judgment, which no court could countenance. We therefore conclude that the district court acted well within its discretion in holding Appellants in civil contempt.

**Penalty**

[¶24] While it was not specifically challenged by Appellants, our review of controlling law compels us to address the portion of the district court's order that requires them to pay $100 to the court for every day the obstructions within the defined boundary of the intersection of Solitude Road and Dubois Heights Road remain in place. That portion of the order holding Appellants in contempt cannot stand.

[¶25] We have recognized that a court may enter orders to compensate an aggrieved party for damage caused by a contemnor's refusal to comply with a court order. *See Walker v. Walker*, 2013 WY 132, ¶ 39, 311 P.3d 170, 178 (Wyo. 2013). "A court may award a judgment for money damages as a compensatory contempt sanction, rather than utilizing the more coercive alternative of ordering a defendant to pay and then perhaps incarcerating him or imposing other sanctions if he is able to comply and fails to do so." *Id.* However, a compensatory civil contempt award must be based upon evidence of actual loss; otherwise, it will be considered speculative and arbitrary. *Walters v. Walters*, 2011 WY 41, ¶¶ 24-25, 249 P.3d 214, 229 (Wyo. 2011).

[¶26] The penalty imposed here cannot be considered compensatory, as it is to be paid to the court. We must determine whether the penalty is really a fine, which would only be appropriate in criminal contempt. *See Horn v. Dist. Court, Ninth Judicial Dist.*, 647 P.2d

1368, 1377 (Wyo. 1982). After reviewing our precedent, we answer that question in the affirmative; that is, the purpose of the $100 a day penalty could only have been to punish Appellants if they do not remove the obstructions, although it would certainly have had a coercive effect. *Id.* (fines in criminal contempt are entirely punitive, distinct to any private damages caused by the contemptuous conduct, and not allocable to private litigants).

[¶27] This contempt proceeding was unquestionably civil in nature. *See Stephens*, ¶¶ 10-11, 239 at 637-38. While the penalty of $100 per day payable to the court until the obstructions were removed might have been a fitting fine for criminal contempt, it is not an appropriate sanction for civil contempt. Appellants' could have been ordered to pay a per-day amount reflecting Appellees' actual proven damages to them, but they were not. The district court was therefore without jurisdiction to impose the fine as it did. *Id.* We therefore reverse so much of the *Order of Contempt* as would have the effect of imposing a $100 per day fine on Appellants. *See Horn*, 647 P.2d at 1378. Of course, if Appellants do not comply with the district court's order without justification after remand, it has the power to utilize other coercive means, including incarceration, to encourage them to do so. *See Turner*, 131 S.Ct. at 2516.

[¶28] Affirmed in part and reversed in part.